# **<u>EXHIBIT B</u>**



**KamberLaw, LLP**
3451 Via Montebello
Suite 192-212
Carlsbad CA 92009
t 310.400.1053  f 212.202.6364

nspector@kamberlaw.com
www.kamberlaw.com

August 25, 2025

*Via Certified Mail*
*Return Receipt Requested*

Naked Whey, Inc.
c/o Stephen Zieminski, President/Registered Agent
382 NE 191st Street
#50062
Miami, FL 33179-3899

> RE: *Notice of Violation of California Civil Code § 1770; Notice of Violation of Consumer Protection Laws; Notice of Breach of Warranties*

Dear Naked Whey, Inc.,

We write this letter to provide Naked Whey, Inc., doing business as Naked Nutrition, and its agents ("Defendants") with notice of violations of the California Consumer Legal Remedies Act ("CLRA") and to provide notice of their 30-day right to cure under Section 1782 of the California Civil Code. In addition, this letter provides notice of breach of California consumer protection laws and notice of breach of warranties. This is a demand letter and must be forwarded to the appropriate party for immediate resolution. Should we not receive a response to our offer of resolution, as set forth below, we provide you with statutory notice pursuant to California Civil Code section 1782 of our intent to file a class action lawsuit. Additionally, we ask that Defendants preserve their records, as detailed more fully below.

Defendants manufacture, market, advertise, label, and sell Naked Shake Chocolate Vegan Protein Powder (the "Products"). On the Product labels, Defendants represent that the Products are a "NAKED SHAKE" powder, which is "ALWAYS NAKED" and is "one of the best-tasting, healthiest protein shakes available." Defendants also state: "Our shake is perfect for those with a busy lifestyle that need a delicious and quick way to supplement their daily protein intake without compromise. As always, we've cut through the clutter and included only the premium ingredients you need." Defendants further state: "Don't let labels and big agribusiness fool you; additives are for their bottom line, not your health." Defendants also tell consumers to "**GET NAKED with Naked Shake**" and state:

**The Naked Difference:**
- Pea Protein Grown on US and Canadian Farms

Naked Whey, Inc.
August 25, 2025
Page 2

- No Artificial Sweeteners, Flavors, or Colors
- Only 140 Calories
- 20 Grams of Vegan Protein and a Complete Amino Acid Profile
- GMO Free and Soy Free
- Vegan and Certified Gluten Free

(collectively, these label Representations are referred to as the "Representations").

Despite these label Representations, according to our independent scientific testing, a single serving of the Products contains lead in excess of the California Proposition 65 Maximum Allowable Dose Level ("MADL"). Specifically, our scientific testing demonstrates that the Products contain .84 mcg of lead per serving. In addition, our scientific testing demonstrates that the Products contain 3.325 mcg of cadmium per serving. Based on the amount of lead contained the Products, Defendants are required to provide a "clear and reasonable" warning to consumers, including by "labeling a consumer product" pursuant to Proposition 65, but have failed to do so. *See* 27 C.C.R. 27001(c); Health & Safety Code § 25249.6.

Defendants' failure to disclose the lead and cadmium in the Products, in the face of their express label Representations, also violates California consumer protection laws. *See e.g. Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1211–12 (S.D. Cal. 2023) ("Read in context, 'SIMPLE DARK CHOCOLATE' and 'GET BACK TO HUMAN' are specific claims about the Products. So, too, is 'made with fine Trinitario cacao beans.' At this stage, the Court concludes Plaintiffs have plausibly alleged that a reasonable consumer reading such statements in the context of the full labels could be misled into believing that the Products do not contain unsafe levels of toxic heavy metals.").

In addition, separate and apart from Proposition 65, Defendants had an independent duty to disclose the lead in the Products based on the health risk associated with consuming the Products and/or because the Products are unfit for human consumption. Defendants' failure to disclose constitutes a misrepresentation and material omission in violation of California's consumer protection laws. *See In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725, at *8 (S.D. Cal. Mar. 27, 2024) (where the defendant made label statements about the quality of the products, the plaintiffs "have plausibly alleged a reasonable consumer could be misled by the lack of any disclosure on the Products indicating that they contain Heavy Metals when they contain the levels of Heavy Metals listed in the CAC.").

**The Products Are Misbranded Under the Law**

Identical federal and California laws regulate food labeling and state that a food is misbranded if "its labeling is false or misleading in any particular or (2) in the case of a food to which section 350 of this title applies, its advertising is false or misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title." *See* 21 U.S.C. § 343(a); Cal. Health & Saf. Code § 111330. The Products are therefore misbranded under the law and subject to immediate recall.

## Violation of California Consumer Protection Statutes

Defendants have violated, and continue to violate, the CLRA and California law. Specifically, in connection with the advertising, labeling, packaging, and marketing of the Products, Defendants have violated the following subdivisions of California Civil Code section 1770(a):

- Representing that the Products have (i) "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which [they do] not have" (1770(a)(5));
- Representing that the Products are of "a particular standard, quality, or grade," when they are of another (1770(a)(7)); and
- "Advertising goods…with the intent not to sell them as advertised" (1770(a)(9)).

In addition, Defendants' conduct violates California Business & Professions Code §§ 17200, *et seq*. Defendants' conduct constitutes an unfair and/or fraudulent business practice, including because Defendants make express label Representations but fail to disclose the material fact that the Products contain lead. Consumers have been directly injured by Defendants' conduct in that they would not have purchased the Products, or would have purchased them on different terms, had they known the truth about the Products.

As a proximate and direct result of Defendants' conduct, our client, Maria Livingston ("Plaintiff"), and similarly situated consumers, have been injured and suffered damages by purchasing the Products. Likewise, Defendants have unreasonably profited from their conduct.

## Breach of Express and Implied Warranties

This letter also provides notice of Defendants' breach of express and implied warranties. Defendants' Representations on the labels of the Products constitute an affirmation of facts or promise. This affirmation and promise formed part of the basis of the bargain between Defendants and consumers of the Products. Defendants breached these express warranties because the label Representations are false and misleading, as described herein, resulting in injury. In addition, there was an implied warranty of merchantability that accompanied each retail sale of the Products. Defendants breached the implied warranty because the label Representations are false and misleading, thus the Products do not conform to the Representations and cannot pass without objection under the contract description.

As a proximate and direct result of Defendants' conduct, Plaintiff and similarly situated consumers have been injured and suffered damages by purchasing the Products. Likewise, Defendants have unreasonably profited from their conduct.

## How to Resolve These Matters

As part of a negotiated resolution, Defendants must agree that they will:

1.     Make changes relating to the labeling of the Products, including by making the required disclosure;

Naked Whey, Inc.
August 25, 2025
Page 4

2.     Remove all false and misleading claims from the labels and packaging of the Products and from the Product advertising;

3.     For each affected consumer, make full restitution and refund the amount he/she paid for the Product(s); and

4.     Allow us to verify, by depositions or other methods, how many consumers were affected by Defendants' improper conduct, that Defendants have implemented any resolution we reach, and that Defendants have implemented procedures to prevent the improper conduct from reoccurring.

Further, on behalf of Plaintiff and similarly situated consumers, we request that Defendants institute a recall program of all Products that contain heavy metals in amounts that exceed the Proposition 65 MADL.

## Records Preservation Request

Not only does this letter serve as a demand, but also a request that Defendants preserve and maintain all of their records, including all documents, electronically stored information ("ESI"), data, and tangible things potentially relevant to the allegations of this case and Defendants' potential defenses, regarding the conduct discussed above, both as to Plaintiff and all similarly situated consumers. Such records include, but are not limited to:

1.     All documents regarding the lead contained the Products, including testing and analysis conducted by Defendants related to heavy metals;

2.     All documents regarding the Representations;

3.     All documents concerning total revenue derived from the sales of the Products in California and the United States; and

4.     Any complaints from any source concerning heavy metals contained in the Products.

"Documents, data, and tangible things" should be interpreted expansively to encompass all materials potentially subject to discovery, including the physical Products and retains of those Products, text, data, images, audio and video recordings (including message systems), and computer systems, code, files, and storage media. By way of example and not as an exhaustive list, these may include documents relevant to the allegations in this case or Defendants' defenses and that consist of or relate to, without limitation:

- documents relating to the aforementioned claims, including internal documents, as well as agreements, communications, work-product, and other documents between, among, or relating to the Products and third-party supply-chain providers, manufacturers, quality control services providers, test laboratories, marketing agencies, distributors, and retailers;

- documents relating to drafting and evaluation of Product-related disclosures and claims, including all documents related to advertising, labeling, promotions, events data, merchandising allowances and other marketing activity;

Naked Whey, Inc.
August 25, 2025
Page 5

- documents relating to Plaintiff, proposed Class members, and communications with or relating to them or their representatives, including consumer complaints related to the Products;

- documents relating to sales of the Products, including but not limited to detailed price and sales data at a daily and/or weekly level and by channel as well as all scanner or scanner panel data;

- documents relating to sales of competitor products, including but not limited to any detailed price and sales data at a daily and/or weekly level and by channel as well as all scanner and scanner panel data; and

- documents and physical evidence relating in any way to the levels of lead contained in the Products.

"Preserve" should also be interpreted expansively to take reasonable measures to preserve potentially relevant evidence, as follows:

- Take immediate steps to locate and preserve evidence not already preserved. Defendants' duty is continuing and applies to evidence of which it later becomes aware, whether created before, during, or after the time periods specified in this case.

- Preserve potential evidence, whether in the form of paper, tangible things (including the Products themselves and retains), or ESI. Regarding ESI:

  - Preserve evidence that consists of or resides on and in systems, network devices, individual and shared computers, mobile devices, storage devices, cloud storage, stationary and portable media, and remote storage. Such evidence may exist on devices or media of business partners and service providers, and on employees' personal computers, portable and mobile devices, and portable media, such as USB drives, as well as social media and other online accounts.

  - Preserve evidence in its native form and format, including all versions and iterations, with intact and unaltered metadata and notations. (Note that even an action such as opening a file may cause the spoliation or loss of metadata, such as the date and by whom the file was last opened.)

  - Preserve both human and machine-readable evidence. Such evidence may include (by way of example and not as an exclusive list) e-mail, voicemail, instant messages, call logs, call center recordings, word-processing files, spreadsheets, databases, calendars, presentations, server logs, network activity logs, system backups, disaster recovery archives, and browser history and cache files on local devices, as well as related user instructions, manuals, diagrams, credentials, and decryption keys.

- Prevent spoliation and loss that may result from the modification, revision, reformatting, updating, overwriting, encryption, archiving, aging, corruption, deletion, wiping, shredding, or destroying of evidence.

Naked Whey, Inc.
August 25, 2025
Page 6

- Secure evidence.

- Intervene to terminate or suspend activities that pose spoliation or loss risks, including where such risks result from automated system maintenance, routine document disposal, or individual actions such as encryption, drive defragmentation, file compression or, as mentioned above, opening a file and thereby altering metadata.

- For devices and media at risk of spoliation or loss, create forensically sound images of ESI using properly documented processes, to preserve evidence that includes intact metadata as well as remnant or fragmentary data that may be recoverable through forensic examination.

■ Identify and notify persons (including entities) anywhere in the world who possess, maintain custody of, or control such evidence as well as persons who control or effect resources or processes that could prevent its preservation or affect litigation discovery of it. Persons to be notified may include Defendants' employees, directors, agents, contractors, carriers, or bailees, or persons who are employees, agents, or contractors of business partners, affiliates, or third-party providers, including providers of information-technology-related goods, services, and resources.

On behalf of Plaintiff and in furtherance of Defendants' preservation duty, we request that you promptly forward a copy of this letter to your attorney and all third persons who may have possession, custody, or control of such evidence. We also request that you promptly forward a copy of this letter to all persons who may control or effect processes that could either impede or facilitate evidence preservation.

Please respond within 30 days of your receipt of this letter. If we do not hear from you within that time period, we will assume that you will not take the corrective action requested. If you contend that any of the facts contained in this letter are inaccurate in any respect, please provide us with all of your facts, contentions, and supporting documents as quickly as possible, but in no event later than 30 days from the date of your receipt of this letter. We are available if you want to discuss the issues raised in this letter.

Respectfully,

KAMBERLAW LLP
Naomi Spector
Attorney at Law